UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ENHANCED ATHLETE, INC., a Wyoming corporation; GILMORE ENGINEERING, INC., an unincorporated association; SCOTT E. CAVELL, an individual; CHARLES ANTHONY HUGHES, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:17-cv-02069-TLN-KJN<br><br>**ORDER DENYING MOTION FOR SANCTIONS** |

This matter is before the Court pursuant to Plaintiff Nutrition Distribution, LLC's ("Plaintiff") Motion for Sanctions (Mot. for Sanctions, ECF No. 26.) against Defendants Enhanced Athlete, Inc. ("EA") and Scott Cavell ("Cavell") (collectively, "Defendants"). Defendants filed an opposition (Opp. to Mot. for Sanctions, ECF No. 35), and Plaintiff filed a reply, (Reply to Mot. for Sanctions, ECF No. 41). For the reasons set forth below, the Court hereby DENIES Plaintiff's Motion for Sanctions. (ECF No. 26.)

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2017, Plaintiff filed a complaint against Defendants for false advertising in violation of the Lanham Act § 43(a)(1)(B) and violation of the Civil Racketeer Influenced and Corrupt Organizations Act. (ECF No. 1.) The complaint alleges that Defendants, who market and sell supplements to body builders, gym users, fitness enthusiasts, and athletes, falsely advertised several of its products containing 2,4-Dinitrophenol ("DNP Products"). (ECF No. 1 at 2–3.) Specifically, the complaint alleges that Defendants promised consumers "numerous purported benefits without mentioning, and in some instances expressly denying any long term negative side effects, and in other cases disingenuously stating that such DNP Products are not yet safe for human consumption . . . even though their sale and extensive promotion by Defendants clearly implies that Defendants intend such products to be ingested." (ECF No. 1 at 2–3.) Thus, Plaintiff alleges "Defendants knew, or should have known that its DNP Products are not recognized as safe and effective for any of the uses suggested by Defendant[s][,] and therefore Defendant[s] [have] knowingly and materially participated in a false, misleading and dangerous advertising campaign through wire transmissions to promote and sell its [DNP Products]." (ECF No. 1 at 3.)

On September 17, 2017, weeks before Plaintiff initiated this lawsuit, EA emailed a newsletter ("Newsletter") to its customers, informing them of a previous lawsuit Plaintiff filed against it, and encouraging them to take action and voice their opinions regarding this lawsuit. (ECF No. 26-1 at 44.) The Newsletter explained that Tauler Smith LLP, Plaintiff's attorney, had a history of filing these types of lawsuits and "ha[s] been fairly successful extorting small business owners for tens of thousands of dollars." (ECF No. 26-1 at 44.) It stated that Plaintiff and his attorney "were attempting to take away your right to choose what you can and cannot experiment on yourself." (ECF No. 26-1 at 44.) The Newsletter then described actions taken in an "equally baseless" lawsuit, where the defendant's supporters contacted the plaintiff's law firm to express their views, and in some cases took improper and illegal action to disrupt the firm in an effort to persuade the plaintiff to withdraw the lawsuit. (ECF No. 26-1 at 45–46.)

On November 17, 2017, EA issued a press release ("Press Release") stating that

"Enhanced Athlete claims that [Plaintiff] is really in the business of shakedown lawsuits to coerce supplement companies to pay a relatively small sum of money to settle the matter or else face substantial legal fees defending against [Plaintiff's] meritless claims." (ECF No. 26-1 at 6.) The Press Release also claimed that Plaintiff "cannot show – and has never been able to show – that it has suffered any actual damage because there is no causal connection between the alleged false advertising by [Plaintiff's] targets and [Plaintiff's] alleged lost sales." (ECF No. 26-1 at 6.)

On November 19, 2017, Cavell sent a mass email ("Mass Email") to EA's customers entitled "Enhance Athlete wins another battle in court!!" (ECF No. 26-1 at 12–13.) The Mass Email began: "We wanted to give you, our fans and friends, an update on the lawsuit against us. So far Tauler has lost EVERY motion filed against us so far." (ECF No. 26-1 at 12.) It then stated that EA is in "the midst of shutting down [Tauler's] entire shake down business model," and included a press release for the Mass Email recipients to share. (ECF No. 26-1 at 12–13.) Cavell also wrote a Facebook post ("Facebook Post") including the same language. (ECF No. 26-1 at 9–10.)

## II. STANDARD OF LAW

A district court "has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). "The most common utilization of inherent powers is a contempt sanction levied to 'protect[] the due and orderly administration of justice' and 'maintain[] the authority and dignity of the court.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925)). However, "[b]efore awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Id.* (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

A party demonstrates bad faith by where it "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* at 649. "A party also demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Id.* (quoting *Hutto*, 437 U.S. at 689 n.14). "The bad faith

requirement sets a high threshold," and is not necessarily met even when a litigant's behavior is outrageous, inexcusable, and appalling. *Id.* "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

### III. ANALYSIS

#### A. The Newsletter

Plaintiff first argues that the Newsletter was a solicitation for "recipients to engage in a campaign to harass [Plaintiff and its counsel], in order to obtain settlement leverage in this action," and thus constituted bad faith. (ECF No. 26 at 10.) However, the Court is unpersuaded that an alleged solicitation made weeks before the commencement of this action was done so "in an effort to create leverage" in this action. Therefore, the Court finds Defendants did not act in bad faith on this basis.

#### B. The Press Release, Mass Email, and Facebook Post

Plaintiff next argues that Defendants acted in bad faith because the Press Release, Mass Email, and Facebook Post contain misstatements of fact that were intended to "damage [Plaintiff and its counsel's] reputation and business relations" and "are likely to prejudice a fair trial." (ECF No. 26-1 at 10–14.) Specifically, Plaintiff argues that the following false statements constitute bad faith:

- "Enhanced Athlete claims that [Plaintiff] is really in the business of shakedown lawsuits to coerce supplement companies to pay a relatively small sum of money to settle the matter or else face substantial legal fees defending against [Plaintiff's] meritless claims."
- "We are on the midst of shutting down his entire shake down business model."
- "Enhanced Athlete intends to spearhead and finance a class action law suit against him."
- "EA further argues that Nutrition Distribution cannot show – and has never been

able to show – that it has suffered any actual damage because there is no causal connection between the alleged false advertising by Nutrition Distribution's targets and Nutrition Distribution's alleged lost sales."

- "Enhanced Athlete wins another battle in court!!"
- "So far Tauler has lost EVERY motion filed against us so far."

Defendants, conversely, contend that they did not publish any misstatements of fact, that Plaintiff is attempting to interfere with Defendants' First Amendment rights, and that there is no basis for the Court's inherent powers as these powers are "limited to protecting the integrity of the judicial process," not "protecting Plaintiff's (or its counsel's) business interests." (ECF No. 35 at 11–20.) For the reasons discussed below, the Court agrees with Defendants.

Plaintiff has not presented sufficient evidence to demonstrate that the challenged statements by Defendants were made in bad faith. First, Plaintiff has not demonstrated that the statements were false, or even that they exaggerated the truth. Of course, even if they were false or misleading statements, there is no categorical rule that false statements receive no First Amendment Protection. *See United States v. Alvarez*, 567 U.S. 709, 719 (2012) ("The Court has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection."). Rather, statements are not protected if they are "knowing or reckless" falsehoods. *Id.* Plaintiff has provided no evidence that these statements were "knowing or reckless" falsehoods. Instead, Plaintiff has provided evidence of speech that is critical of Plaintiff and its counsel's business practices. The government may not enjoin or punish speech simply because it is critical of a business and its practices. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) ("No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court.").

Moreover, in order to demonstrate that these alleged misstatements constitute bad faith, Plaintiff must not only demonstrate they are knowing and reckless falsehoods, but must also show that they abused the judicial process. *See Ass'n of Flight Attendants v. Horizon Air Indus.*, 976 F.2d 541, 549 (9th Cir. 1992) ("A court's inherent authority extends only to remedy abuses of the

5

judicial process."). Plaintiff simply fails to explain how these alleged misstatements abused the judicial process. Rather, the majority of Plaintiff's brief focuses around the harm to Plaintiff's "counsel's business pursuits, client relations, and overall reputation." (ECF No. 26 at 11.) Inherent powers are not meant to protect Plaintiff's counsel's business pursuits, client relations, and overall reputation. They are meant to protect the due and orderly administration of justice. In a futile attempt to argue that Defendants' alleged misstatements will somehow affect the judicial process, Plaintiff makes a slapdash conclusory statement at the end of its brief stating that these statements would prejudice a fair trial because they would prejudice a potential juror or consumer survey. (ECF No. 26 at 13.) The Court simply fails to see how these statements would prejudice a fair trial and Plaintiff has not set forth any cognizable explanation. Accordingly, the Court finds that Defendants have not acted in bad faith.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Sanctions.

IT IS SO ORDERED.

Dated: May 30, 2018

Troy L. Nunley
United States District Judge